1913; the defendant took no exception in the court below at that time, but waited until the trial, April 18, 1913, when, after the plaintiff had produced evidence to substantiate his case as finally pleaded, a motion to strike out the testimony was made, upon the ground of a variance between the proofs and the averments in the original statement. This motion was properly refused.

The learned court below should not have entered the nonsuit, and substantial error was committed in the refusal to take it off; hence, the judgment is reversed, with a venire facias de novo.

---

# Wanamaker, Appellant, v. Schuylkill River East Side Railroad Company.

*Equity—Equity jurisdiction—Act of February 19, 1849, P. L. 79 —Maintenance of crossing—Remedy at law—Eminent domain— Condemnation for railroad purposes—Covered footwalk—Certification to law side of court.*

1. A railroad company which formally condemns an eleven feet wide strip of private property adjoining its right of way does not make an improper use of such strip by erecting thereon a covered footwalk six feet wide and eleven feet high as a means of access to a nearby subway and elevated system.

2. Where the right of way of a railroad company is acquired by deed and subsequently an eleven feet wide strip adjoining and parallel to such right of way is condemned by the company, the duty, if any, on the part of the company to maintain a crossing over its right of way under the Act of February 19, 1849, P. L. 79, which provides that a railroad company may be required to maintain a crossing where it bisects the land of any owner, may not be enforced in equity. The act itself provides a remedy at law for failure to so construct.

3. A bill in equity against a railroad company and a contracting company employed by it to construct a covered foot walk was properly certified to the law side of the court, where it averred that the defendant railroad company had acquired a right of way over plaintiff's land by a deed and had subsequently condemned an adjoining and parallel eleven feet wide strip, and had been

in possession of such strip for a period of six years at the time of the filing of the bill; that defendant was about to erect on the condemned strip a covered footwalk six feet wide and eleven feet high as a means of access to a nearby subway and elevated system; and prayed that the defendant be enjoined from constructing said footwalk on the ground that it was an improper use of the land condemned and would cut off the plaintiff's access to his land from the opposite side of the right of way.

Argued Jan. 15, 1914.   Appeal, No. 251, Jan. T., 1913, by plaintiff, from decree of C. P., No. 3, Philadelphia Co., March T., 1912, No. 4978, refusing an application for an injunction and certifying proceedings to the law side of the court, in case of John Wanamaker v. The Schuylkill River East Side Railroad Company, Roydhouse-Arey Company, and United States Fidelity & Guaranty Company.   Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity for an injunction.   FERGUSON, J., filed the following opinion:

This is a bill in equity in which the complainant asks for an injunction restraining the defendants from constructing a covered footwalk along the westernmost boundary of his ground situate between Chestnut street and Market street and west of Twenty-fourth street in the City of Philadelphia.

The bill sets out that by deed dated the 28th of December, 1888, the City of Philadelphia, the then owner of the tract of ground running from Twenty-fourth street westward to the bulkhead line of the river Schuylkill, granted an easement to the Schuylkill River East Side Railroad Company over a certain tract approximately thirty feet wide and running from Chestnut street to Market street, being at its greatest distance about seventy-seven feet east of the bulkhead line of the Schuylkill river; the said deed granting to the grantee the free and uninterrupted right and privilege of passing at all times thereafter and forever, through, over and along

the track, with or without locomotives or other motive power of any kind then known or that might thereafter be discovered, passenger, freight, baggage, mail or other cars, "and together with the right, liberty and privilege of constructing, maintaining and using upon the above described strip or piece of land any and all such depots and station houses, warehouses, offices, engine houses, water, telegraph or signal stations, or other buildings and appurtenances, branches, sidings, turnouts, bridges, viaducts or other devices as the said company may deem necessary or useful for or in connection with the construction, maintenance, operation and repair of the said railroad and appurtenances"; that by deed dated the sixth day of June, 1901, the City of Philadelphia granted and conveyed unto William T. Elliott the large tract of ground of which the said thirty foot strip was part; that the said William T. Elliott held the same as trustee for complainant, and by deed dated the 11th of April, 1912, the said William T. Elliott granted the same to the complainant; that on the 15th of December, 1905, the Schuylkill River East Side Railroad Company delivered a bond to William T. Elliott, the then owner of the said premises, in the sum of $25,000, conditioned for the payment of such amount of damages as the said William T. Elliott should be entitled to receive for the entering by the said The Schuylkill River East Side Railroad Company upon a strip of land of the said William T. Elliott, eleven feet wide, in said bond recited as running from the north side of Chestnut street to the south side of Market street, in the Ninth Ward of the City of Philadelphia, which said tract of land adjoins the east side of the thirty feet right of way of the said The Schuylkill River East Side Railroad Company, which bond has since been assigned by the said William T. Elliott to the complainant; that no damages for the taking of said strip of ground have ever been agreed upon or assessed in the manner provided by law, either to the said William T. Elliott or to the complainant;

that the said The Schuylkill River East Side Railroad Company, by its agents, the said Rodyhouse-Arey Company, has commenced and is proceeding with the construction of a covered footwalk along and upon the easternmost six feet of the said eleven feet wide strip of land, said structure to be about six feet wide and eleven feet high, and to be constructed with a concrete base, with wooden sides for about three feet above said concrete base, and above that of galvanized iron mesh, the roof to be peaked and covered with corrugated iron; that the complainant is informed and believes that the railroad company defendant seeks by means of this covered walkway to effect a connection with the subway and elevated system of the Philadelphia Rapid Transit Company at Market street, and that the erection of said structure will cut off access to that portion of the complainant's property which lies between the western line of the railroad's right of way and the port warden's or bulkhead line of the Schuylkill river; and, further, that the right to condemn land for the construction of such a covered footwalk is not included in the right to condemn land for the purpose of constructing or widening a railroad, as provided by law.

The defendants have filed separate answers in each of which the respondents deny the equity jurisdiction of the court and expressly aver that there is a complete and adequate remedy at law for the redress of any wrongs alleged in the bill. In addition a formal motion under the Act of June 7, 1907, P. L. 440, has been filed in which the court is asked to certify the cause to the law side of the court at the costs of the complainant.

We are of opinion the motion must be granted. The condemnation of the land was complete upon the acceptance of the bond by Mr. Elliott: Dilts v. Railroad Co., 222 Pa. 516. The bill avers that the bond was delivered in 1905. It nowhere avers that it was not accepted and the averment that it was afterwards assigned to the complainant was an exercise of dominion and an asser-

tion of a right to its benefits inconsistent with any theory other than acceptance. For damages for the taking of the land, therefore, an action at law was indicated and the statutes provide a method for their assessment. The fact that the parties have not as yet had the question of damages determined does not affect the condemnation, and it is not within the power of a Court of Equity to deal with the matter.

The bill apparently does not question this conclusion, but rather attacks the use to which the strip of land condemned is now being devoted. It is averred that the right to condemn does not contemplate a taking for the use indicated by the bill, but it fails to state in what respect the use is improper. It avers that the structure is a covered footwalk connecting the station of the railroad company at Chestnut street and the subway and elevated system of the Philadelphia Rapid Transit Company. If that is the purpose, it is not clear how that purpose brings the structure outside the provisions of the Act of March 17, 1869, P. L. 12, under which the land was taken. Under that act, the right is given to widen the line whenever it may be necessary for the better securing the safety of persons or property and increasing the facilities and capacity for traffic. In Dilts v. Railroad Company, 222 Pa. 516, it was held that such an easement gave the right "to exclusive possession, to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure, including necessary foundations and to deal with it within the limits of railroad uses as absolutely and as uncontrolled as an owner in fee." The averments of the bill do not show any facts from which we could conclude that the use to which the land is now being devoted is not within the limits of the railroad uses. It might with propriety be described as a necessary approach to the station proper, or a part of the station platform. "The law commits to the board of directors the determination of the question of the necessity in connection with the proposed

change": Scranton Gas & Water Company v. D., L. & W. R. R., 225 Pa. 152; Sutton v. R. R. Co., 211 Pa. 554. Aside from this consideration, there is no averment that the condemnation was for the purpose of constructing a covered footway. In fact, the condemnation was effectual nearly seven years before the construction of the footwalk was commenced, and the bill is silent as to the uses to which the eleven-foot strip was devoted during the intervening years. The condemnation, so far as the bill indicates, was without particular purpose, and the land could have been used for the general purposes to which the defendant was entitled to use it by the provisions of the Act of 1869, and which were acquiesced in by the acceptance of the bond. The bill does not aver as a fact that the proposed structure is not necessary for the "better securing the safety of persons and property and increasing the facilities and capacity for the transportation of traffic." We cannot entertain the bill. If the railroad has been in possession for more than six years under the condemnation, it cannot be ousted in equity. If complainant has any rights by reason of the use to which the strip is being devoted, the remedy is by ejectment: Peiffer v. R. R. Co., 12 Lanc. Law Review 265.

The greater emphasis, however, is laid upon the averment of paragraph 12, in which it is alleged that the structure proposed will cut off access to that portion of complainant's property which lies between the western line of the railroad company's right of way and the bulkhead line of the Schuylkill river. This property to the west of the railroad appears by the plan annexed to the bill to be seventy-seven feet wide at the south end and forty-eight feet wide at the north end and 453 feet long on the bulkhead line. The bill does not state that this property has been put to any use while in the possession of Mr. Elliott, or the complainant, or that any use is at present proposed. It does not aver that a crossing was had at any time since the railroad was built, or that the right to one was ever asserted. Neither is it averred

that a crossing is now desired by complainant and denied by the railroad. The bill contents itself with the averment that access is cut off.

As we read the 38 (12) Section of the Act of February 19, 1849, P. L. 79, it is clear that a railroad company may be required to maintain a crossing where it bisects the land of any owner, and for a failure so to do is liable to damages to be assessed as provided by the 37 (11th) section. It is doubtful, however, if this applies in the case where the easement is acquired by deed, especially when the deed gives a right to "free and uninterrupted" user, as is the case here, so far as relates to the original right of way. The new strip having been acquired under the Act of 1869, it scarcely comes within the class of cases in which the land of an owner is bisected. The land on the other side of the strip is now held by the railroad under its deed and the other property of complainant is west of the land covered by that deed. In addition, it must be noted that by the deed the railroad is privileged to erect on the original right of way structures which would make a crossing at grade impossible.

But whether this fact is of importance or not, it is clearly provided in the act that if complainant is entitled to a crossing and the right to it is denied, the complainant has a remedy at law: Dimmick v. R. R. Co., 180 Pa. 468. There is nothing in the bill which discloses any difficulty in erecting an overhead crossing, should complainant be entitled in law to have one, and should the erection of one be attempted by complainant and resisted by the defendant, a situation would be presented which is not before us now.

The bill must therefore be certified to the law side of the court.

The United States Fidelity & Guaranty Company, surety on the bond to William T. Elliott, was made a party defendant and filed an answer averring that it was not interested in the controversy; that it was not a

proper party to the proceeding and that the plaintiff had a complete and adequate remedy at law.

The court dismissed exceptions to its order refusing application for a preliminary injunction and certifying the proceedings to the law side of the court.

*Error assigned,* among others, was the decree of the court.

*Joseph B. Townsend,* of *Townsend, Elliott & Townsend,* with him *George Sterner* and *William L. Nevin,* for appellant.

*W. B. Linn,* with him *H. B. Gill,* for Schuylkill River East Side Railroad Company, appellee.

*Tustin & Wesley,* for Roydhouse-Arey Company, appellee, were not heard.

PER CURIAM, February 16, 1914:

The order certifying the cause to the law side of the court is affirmed for the reasons stated in the opinion of Judge FERGUSON.

---

# Stewart, Appellant, v. Manasses.

*Negligence—Physician—Hospital—Nonsuit.*

In an action against a physician to recover damages for personal injuries, a nonsuit is properly entered where it appears that plaintiff on the advice of the defendant went to a public hospital for a surgical operation; that defendant was a member of the associated staff of the hospital and that he agreed for a stipulated sum to perform the operation, but the hospital expenses were to be paid by the plaintiff; that plaintiff was operated upon by the chief hospital surgeon, assisted by the defendant; that she was prepared for the operation by hospital nurses under the direction of the directress of nurses; that after the operation she was burned by a hot water bottle that had been left by one of the